UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

Robert A. Cash,

    Plaintiff,

    v.

Carolyn W. Colvin,
Acting Commissioner of Social Security
Administration,

    Defendant.

Case No. 2:13-CV-118 JVB-PRC

**OPINION AND ORDER**

Plaintiff Robert A. Cash seeks judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, who denied his application for Disability Insurance Benefits and Supplemental Security Income disability benefits under the Social Security Act. For the following reasons, the Court affirms the Commissioner's decision.

**A. Procedural Background**

On December 20, 2010, Plaintiff applied for disability insurance benefits alleging a disability onset beginning August 31, 2005. (R. at 139.) He later amended his onset date to September 15, 2009. (R. at 139.) The Agency denied his claims initially on March 16, 2011, and upon reconsideration on April 11, 2011. (R. at 74–81, 83–88.) On May 12, 2011, Plaintiff requested a hearing, and he received a hearing before Administrative Law Judge ("ALJ") Henry Kramzyk on May 17, 2012. (R. at 29, 89–90.) On June 20, 2011, the ALJ determined Plaintiff was not disabled and therefore not entitled to disability benefits. (R. at 24.) His opinion became final when the Appeals Council denied Plaintiff's request for review on March 29, 2013. (R. at 2–5.)

Before Plaintiff's ALJ hearing, the SSA notified Plaintiff of his right to have counsel present during the hearing. (R. at 91–92.) Later, at the start of the hearing, the ALJ told Plaintiff about the ways a representative could assist him with his case, informed him that a representative's fees were limited by statute and regulations, told him the exact amount, and explained that there were attorneys who would not charge a fee unless they helped Plaintiff win his case. (R. at 32–33.) But Plaintiff unequivocally waived his right to counsel. (R. at 33.)

**B. Factual Background**

**(1)** *Plaintiff's Background and Testimony*

Plaintiff was born in 1965. (R. at 37.) He has a high school equivalency degree. (R. at 39.) He can read but has trouble with spelling. (R. at 39.) He is single and lives with his mother. (R. at 37.)

Before 2009, Plaintiff worked by selling and installing garage, entry, and storm doors for about twenty-two years. (R. at 43.) For six of those twenty-two years, he was self-employed. (*Id.*) This type of work required him to lift about 50–100 pounds repeatedly each day when he installed residential doors. (R. at 45, 46.) He performed this work alone. (R. at 46–47.) It also required he spend the majority of his work days either standing, walking, bending, or climbing. (R. at 45.) The only time he sat was for about two hours each day when he would drive to the different work sites. (R. at 47.) For one of his employers, he had to do heavier lifting because he had to install larger commercial doors. (R. at 46.) He had a helper when he installed the larger commercial doors. (*Id.*)

Also, for a short time from 2001–2002, Plaintiff worked seasonal summer hours as an auto parts sales person at Auto Zone. (R. at 63.) The heaviest objects he had to lift at this job were

cases of oil, which weighed about twenty-five to thirty pounds. (R. at 63–64.) He is currently unemployed, but he applied to WiseWay Foods and discussed potential employment with a Menards employee. (R. at 68.) At the time of the hearing, he had not received any interviews or job offers from these inquiries. (*Id.*)

Plaintiff testified that he cooks, cleans regularly, and launders small loads of clothes every once in a while. (R. at 56.) He can shop, drive, shower, and bathe by himself. (R. at 57.) He can also shop for and repair lawn mowers and bicycles to re-sell them. (R. at 58.) However, he said he has no fun at all, does not meet with friends or family at restaurants for lunch and dinner, and does not go to movie theatres. (R. at 55–56.) He also says he is depressed and takes medication for this. (R. at 52–53.)

He claims he can only safely lift a maximum of about ten pounds, walk for about half a mile before he has to take a break, and stand for a few minutes before needing to sit. (R. at 55.) Plaintiff can then remain sitting for about thirty minutes before needing to change positions. (*Id.*) He can bend at the waist and squat, while also being able to grasp, feel, and manipulate objects with his hands. (*Id.*)

Plaintiff still maintains relationships with a few friends. (R. at 59.) His uncle lives next door, and Plaintiff socializes with him as well. (R. at 59, 61.)

**(2)** *Medical Evidence*[1]

Plaintiff alleges severe, medically determinable impairments of degenerative disc disease of

---

[1] The following is an alphabetized list of some of the doctors whom Plaintiff visited:
(1) Dr. Thomas Hall—digestive health specialist;
(2) Dr. Jennifer Maya—family doctor, who endorsed Plaintiff for his disability claim;
(3) Dr. Victor Rini—doctor of psychology;
(4) Dr. Fernando Rivera—family doctor, who endorsed Plaintiff for his disability claim; and
(5) Dr. Dean Shoucair—specializes in occupational medicine.

3

the lumbar spine at L5–S1, blurry vision, depression, abdominal problems, recurring and severe headaches, left leg pain and numbness, and obesity. (R. at 16.)

(a) *Severe Physical Impairments*

Plaintiff visited Porter Hospital several times in December 2008 and complained of abdominal pain. (R. at 212.) Both physical examinations and diagnostic testing results were normal. (R. at 219–21, 223–25, 227–29, 353.) More than a year later, in January 2010, Plaintiff visited Community Hospital in Munster, complaining of abdominal pain, but the CT scan was normal. (R. at 230–37.)

About five months later, in June 2010, he went to St. Mary Medical Center with pain behind his left eye, but the CT scan of his head was normal, other than the revelation that he had mild to moderate sinus disease. (R. at 248, 254, 356, 395.) About three months later, in September 2010, he visited North Shore Health Center complaining of pain, but the physical examination was normal and negative for everything other than some abdominal pain. (R. at 272–74.) About a week later, he went to St. Mary Medical Center with abdominal pain. (R. at 255.) Both the physical examination and CT scan were normal. (R. at 258, 266.)

Next month, state agency physician, Dr. Dean Shoucair examined Plaintiff. (R. at 294–97.) The physical examination revealed that both of his arms and legs had good ranges of motion; he could sit and move on and off the examination table; and he had no abdominal tenderness. (R. at 295–96.) He was also able to heel, toe, and tandem walk—without a walker or cane—with no problems. (R. at 296.) Further, Plaintiff denied having any eye blurriness, and he had 20/40 vision in both eyes, without glasses. (R. at 295.)

In February 2011, Dr. Jennifer Maya determined he had depression, noted direct tenderness

in his abdomen, and sent him to the emergency room to rule out cholecystitis or pancreatitis. (R. at 327–28.) Later that day, diagnostic testing showed no clinically significant abnormalities, while a physical examination of his right side showed mild tenderness. (R. at 212–13.) A week later, an x-ray showed degenerative disk disease at the L5–S1. (R. at 333–34.) A few days later, diagnostic testing of the lumbar spine showed Plaintiff had degenerative disk disease, but testing of the stomach was normal, except for excessive gas. (R. at 209–10.)

In the next month, Dr. Maya opined that Plaintiff may have sciatica and a ruptured tendon in addition to his claimed abdominal pain. (R. at 423–24.) About two months later in May 2011, Plaintiff complained of abdominal pain. (R. at 465.) Dr. Thomas Hall found Plaintiff to be overweight and also found an adrenal adenoma, but he did not find any abdominal tenderness. (466–67.) However, a CT scan, taken about a year later in May 2012, showed a small left adrenal nodule. (R. at 490.)

He also saw several doctors and had surgery after his ALJ hearing. (Pl.'s Reply Br., DE 20 at 4–18. *See generally* Pl.'s Supp. Br., DE 21.) But the records for these visits only identify Plaintiff's condition when the doctors actually saw him and do not refer to his pre-hearing condition. (*See Id.*)

(b) *Severe Mental Impairments*

In January 2011, state agency clinical psychologist Dr. Victor Rini diagnosed Plaintiff as having recurrent and mild major depressive disorder. (R. at 279.) Dr. Rini also assessed Plaintiff to have a Global Assessment of Functioning ("GAF") score of 57.[2] (*Id.*)

---

[2] GAF is a numerical scale of 0–100 used to rate the psychological, social, and occupational functioning of adults. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). A GAF score in the 51–60 range indicates moderate symptoms (*e.g.* occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.* few friends or conflicts with peers or co-workers). *Id.* at 32.

(c) *Medical Opinions*

In January 2011, Dr. Fernando Rivera endorsed Plaintiff for temporary disability. (R. at 369.) Dr. Rivera determined that he had significant limitations with walking, lifting, pushing, pulling, bending, squatting, crawling, and climbing. (R. at 370.) He opined that Plaintiff had moderate limitations regarding sitting, standing, grasping and manipulating objects, reaching above shoulders, repetitive leg movements, and exposure to temperature and humidity changes. (*Id.*) Later that month, with respect to work-related activities, examining state agency physician Dr. Shoucair determined that Plaintiff could sit, stand, walk, handle objects, hear, see, and speak. (R. at 297.)

Later, two non-examining state doctors, one in March and the other in April 2011, reviewed the evidence and their opinions were that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk (with normal breaks) for six hours in an eight hour work day, and sit (with normal breaks) for six hours in an eight hour work day. (R. at 303, 340.)

In April 2011, Dr. Maya endorsed Plaintiff for disability and noted that he had significant limitations regarding sitting, standing, walking, lifting, pushing, pulling, bending, squatting, climbing, repetitive leg movements, and normal housework. (R. at 362–63.) She also noted he had moderate limitations with crawling, reaching above shoulders, driving, exposure to temperature and humidity changes, exposure to dust fumes or gasses, and caring for personal needs. (*Id.*)

There were also opinions regarding Plaintiff's diagnosed mental impairments. In January 2011, a non-examining state doctor of psychology reviewed the evidence and determined that his

mental impairments were not severe. (R. at 280.) In March 2011, another state agency doctor of psychology affirmed this written opinion in its entirety. (R. at 338.)

**(3)** *Vocational Expert's Testimony*

Vocational expert Leonard Marion Fisher ("VE") testified at Plaintiff's May 17, 2012, hearing. (R. at 62–69.) The VE classified Plaintiff's former jobs of auto parts sales person skilled and light, residential garage door installer as skilled and heavy, and commercial garage door installer as skilled and very heavy. (R. at 64.)

The ALJ provided the VE with three hypotheticals to evaluate, all including Plaintiff's age, education, and work experience. (R. at 65–68.) The first scenario also incorporated the limitations from state agency doctors' residual functional capacity ("RFC"). (R. at 65, 303, 340; *see supra* at 6.) This individual also could never climb ladders, ropes, or scaffolds but could occasionally climb ramps and stairs, as well as balance, stoop down, crouch, kneel, and crawl occasionally. (R. at 65–66.) The VE opined that the individual in the first scenario could not perform Plaintiff's past work, which was light, heavy, or very heavy and skilled, but he could perform work that was light and unskilled. (R. at 66.) Examples of work at this skill and exertion level include parking lot attendant, school bus monitor, inspector, wire prep machine tender, and small parts assembler. (*Id.*)

Next, the ALJ proposed a second hypothetical individual with the same limitations as the first, except that this second individual could lift, carry, push, and pull up to ten pounds occasionally and lesser weights frequently and could sit for six hours and stand or walk for two hours per day. (*Id.*) The VE explained that this individual could do unskilled sit-down work. (R. at 67.) Examples of work at this exertion and skill level include hand mounter, touch-up screener

for printed circuit board assembly, paper-printed circuit layout worker, and eye glass frame polisher. (*Id.*)

Finally, the ALJ proposed a third hypothetical with the restrictions from the second hypothetical but added that this person would consistently require three or more absences per month. (*Id.*) The VE opined that this many absences per month would preclude sustained, competitive employment. (*Id.*)

**(4)** *ALJ's Decision*

On June 20, 2012, the ALJ decided that Plaintiff was not disabled. (R. at 24.) The ALJ determined that Plaintiff had two severe impairments: degenerative disc disease of the lumbar spine and obesity. (R. at 16.) He found Plaintiff's BMI of 31 to be reasonably related to Plaintiff's pain and immobility allegations. (R. at 20.) He determined that the following claimed impairments were "non-severe": abdominal problems (because he worked previously with this pain and CT scan showed no significant impairment), blurry vision (because he has 20/40 vision, without glasses, and no problems seeing), depression (after the ALJ considered the four broad functional areas in Section 12.00C of 20 C.F.R. § 404, Subpart P, Appendix 1), recurring and severe headaches (CT scan showed only sinusitis and this does no more than minimally limit his work activity), and left leg pain and numbness (because he performed heel, toe, and tandem walking during a physical examination). (R. 16–17.) These did not meet any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 18.)

Additionally, the ALJ discussed Plaintiff's daily activities and social functioning. (R. at 17.) The ALJ determined that Plaintiff's medically determinable impairments could reasonably cause his alleged symptoms. (R. at 19.) However, the ALJ questioned Plaintiff's credibility to the

8

extent of its inconsistency with his RFC assessment. (R. at 20.) The ALJ found inconsistencies between Plaintiff's alleged functional limitations and his actual daily activities and socialization. (*Id.*) He actually found that Plaintiff's reports as to his daily activities suggest he is not disabled. (*Id.*)

Regarding opinion testimony, the ALJ gave considerable weight to the state agency consultants' and psychological experts' opinions. (R. at 21.) He found these opinions to be consistent with the record because they all reviewed the medical evidence and are familiar with Social Security regulations. (*Id.*) He gave Dr. Shoucair's opinion little weight because he decided it gave "very little information" about the Plaintiff's functioning level. (*Id.*)

He also gave little weight to Dr. Rini's psychological opinion because he thought it merely indicates the claimant has normal intellectual ability, average memory and social functioning, and below average concentration (though Dr. Rini did not indicate how far below average). (R. at 22.) He also gave little weight to Plaintiff's GAF score, which Dr. Rini scored. (*Id.*)

Further, he gave little weight to Dr. Maya's (though he referred to her as "Dr. Mayo") and Dr. Rivera's opinions because he did not think either of their names appeared on Plaintiff's medical records. (*Id.*) He also found their opinions to be inconsistent with the record, somewhat vague, and not consistent with a finding of disability. (*Id.*)

The ALJ determined he could perform light work. (R. at 23.) Thus, he concluded that, given Plaintiff's age, education, work experience, and residual functional capacity, there were other jobs that existed in significant numbers that the Plaintiff could perform. (R. at 23.)

**C. Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C.

§ 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of such "evidence as a reasonable mind might accept as adequate to support a conclusion." *KS Energy Servs., LLC v. Solis*, 703 F.3d 367, 371 (7th Cir. 2012). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). However, this Court will ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion" so a reviewing court may assess the validity of the agency's ultimate findings and provide meaningful judicial review. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**D. Disability Standard**

To qualify for SSI disability benefits, claimants must establish they suffer from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform her past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart,* 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding

that the claimant is disabled. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

**E. Analysis**

In his opening brief, Plaintiff recounts the tragic events leading up to his disability request but fails to challenge any of the ALJ's classifications, findings, or assessments in the present case. Although *pro se* litigants are held to a less exacting standard than those represented by counsel, a court must be able to discern cogent arguments with citations to supporting authority. *McCormick v. City of Chi.*, 230 F.3d 319, 325 (7th Cir. 2000). Plaintiff has not supported his claim with any legal arguments in this appeal but only asks the ALJ decision be remanded to consider new medical evidence.

**(1)** *Plaintiff is not Entitled to a Remand for Consideration of Newly Submitted Evidence*

Plaintiff claims the ALJ's decision is inadequate because it did not include recently acquired evidence in its analysis. (Pl.'s Reply Br., DE 20 at 1.) Under limited circumstances, a court may review evidence that was not available to the ALJ to determine whether the claimant is entitled to a remand under 42 U.S.C. § 405(g). *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815 (7th Cir. 1993). A case may only be remanded if the evidence is "new" and "material," and the plaintiff shows "good cause" for failing to introduce it during the hearing. *Id.* at 818. Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir.2005) (quoting

*Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). This new evidence is "material" if a "reasonable possibility" exists that the ALJ would have reached a different conclusion had the information been considered. *Id.* (quoting *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)).

However, new evidence is only material if it pertains to the claimant's condition "during the relevant time period encompassed by the disability application under review." *Id.* (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir.1990)). The evidence must "relate to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b) (2013); *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). Medical records "postdating the hearing" that only refer to a plaintiff's current condition, not his condition at the time the Social Security Administration considered his application, do not qualify as new and material evidence. *Schmidt*, 395 F.3d at 742.

Here, the Plaintiff is not entitled to a remand because the supplemental medical evidence is not "material" within the meaning of 42 U.S.C. § 405(g). The medical evidence upon which Plaintiff asks for a remand includes treatment notes and notes regarding a shoulder surgery, and the earliest of these records is from December 2012. (Pl.'s Reply Br., DE 20 at 4–18.) Some of these records are even incomplete. (*See, e.g.*, *id.* at 10 (including only page one of seven).) The records do not indicate when exactly this surgery took place, but Plaintiff said it happened in March 2013. (*Id.* at 1.) The ALJ issued his opinion in June 2012. The records at issue thus pertain to the Plaintiff's post-hearing condition and could not have affected the ALJ's decision. Therefore, they are not "material" evidence under 42 U.S.C. § 405(g).

Accordingly, if his condition has in fact worsened to the point that he is now disabled, Plaintiff's remedy—if he meets the other requirements—is to file a new claim for disability benefits. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("If Mr. Getch has developed

12

additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application."); *see also Godsey v. Bowen*, 832 F.2d 443, 444–45 (7th Cir. 1987) (explaining that, while the new medical evidence showed that the claimant's condition had deteriorated in the years since the administrative hearing, it did not show that his condition was disabling during the relevant period and, therefore, the proper remedy for him was to file a new application for benefits).

Appropriately, the Court does not consider the new evidence attached to Plaintiff's reply brief. Therefore, this evidence cannot be the basis of a remand.

**(2)** ***The ALJ's Error Regarding Dr. Maya's Opinion was Harmless***

An ALJ error may be harmless. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). This Court will not remand a case to the ALJ for further explanation where it is convinced that the ALJ will reach the same result, because that would be a waste of time and resources for everyone involved. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Spiva*, 628 F.3d at 353. "[T]he question . . . is prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective." *McKinzey*, 641 F.3d at 892.

Here, the ALJ concluded that "Dr. Mayo's" opinion is entitled to little weight, and one of his reasons for this little weight is because this "Dr. Mayo's" name does not appear on any of Plaintiff's medical records. (*Id.*) Rightfully so—there are no medical records from a "Dr. Mayo." However, Dr. Maya (not "Mayo") was the doctor who actually submitted this opinion. Dr. Maya's name, unlike "Dr. Mayo's" name, does appear on Plaintiff's medical records. (*See, e.g.*, R. at 327–28.) While this reason was faulty, the other reasons the ALJ gave for according little weight to the opinion—inconsistency with the rest of the record and vagueness—are

13

enough to make this error harmless. It would make no sense to remand this case to the ALJ as he would still come to the same conclusion because of these other factors.

**(3) *The ALJ Supported his Decision with Substantial Evidence***

The record contains substantial evidence to support the ALJ's finding that Plaintiff could perform a significant number of jobs despite his functional limitations. The ALJ found that Plaintiff had two severe physical limitations but concluded that none of these impairments met or equaled the required listing. In doing so, the ALJ noted the absence of objective medical evidence supporting Plaintiff's complaints. A claim for disability benefits cannot be supported by the claimant's subjective complaints alone. 20 C.F.R. § 404.1529(a). The ALJ weighed the findings recorded by Plaintiff's physical and mental examiners and found nothing in their reports indicating that Plaintiff had a severe disability. The ALJ took into account Plaintiff's testimony as well as his mother's testimony about Plaintiff's daily activities. All of these factors are discussed throughout the opinion and provide substantial evidence to support the ALJ's ruling.

The ALJ determined that Plaintiff could not perform his previous work duties; however, he found that Plaintiff had the residual functional capacity to complete certain types of unskilled light work. The ALJ relied on the opinions of two reviewing state agency physicians who opined that Plaintiff could perform light work with limitations. He also relied on two reviewing state psychologists who stated that Plaintiff's depression does no more than minimally interfere with his work activity. Plaintiff offered no competing medical opinions to challenge these findings. The ALJ did not err by relying on the opinions of the two agency physicians and two state agency psychologists and the lack of evidence to the contrary.

The ALJ also considered Plaintiff's pain complaints during the hearing in conjunction with Plaintiff's testimony about his daily activities. After evaluating the evidence, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his pain and symptoms were not substantiated by the Plaintiff's daily activities or objective medical evidence. The ALJ did not err by finding these inconsistencies, and Plaintiff does not challenge this determination.

Finally, a claimant has a right to counsel at a disability hearing under 42 U.S.C. § 406(a)(1) and 20 C.F.R. 404.1700. If properly informed of this right, the claimant may waive it. *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir.1991). To ensure a valid waiver of counsel, the ALJ is required to explain to the *pro se* claimant: (1) the manner in which an attorney can aid the claimant in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation on attorney fees to 25% of past due benefits and required court approval of the fees. *Id.*

In this case, the ALJ obtained a fully consensual waiver of Plaintiff's right to representation at the hearing. The ALJ properly listed the ways a representative could assist Plaintiff with his case, informed him that a representative's fees were limited by statute and regulations, told him the exact amount, and explained that there were attorneys who would not charge a fee unless they helped Plaintiff win his case. Nonetheless, Plaintiff voluntarily waived his right to representation.

**F. Conclusion**

The Plaintiff's remand request is based entirely upon his request to review new medical evidence. However, the Court finds that the Plaintiff's new medical records are inadmissible.

Further, the ALJ decision is based upon substantial evidence and the error regarding Dr. Maya was harmless. Therefore, the Court affirms the ALJ's decision.

SO ORDERED on March 5, 2014.

                                                                      s/ Joseph S. Van Bokkelen
                                                                      Joseph S. Van Bokkelen
                                                                       United States District Judge